

# EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Wells Fargo Bank, N.A., Wells Fargo & Company, Wells Fargo Foundation, Kent Mannina, and Devon Silvera, *an individual, and Does 1 through 20, inclusive*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

~~Danford Foundation and Katherine F. Fisher~~ Danford Foundation, a California nonprofit public benefit corporation, and Katherine F. Fisher, an individual

**ENDORSED FILED**
SAN MATEO COUNTY

DEC 11 2018

Clerk of the Superior Court
By: ANTONIO R. GERONIMO
Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: San Mateo Superior Court
*(El nombre y dirección de la corte es):*
400 County Center, Redwood City, CA 94063

CASE NUMBER: *(Número del Caso)*
**18CIV06625**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ted J. Hannig; 990 Industrial Road, Suite 207, San Carlos, CA 94070; (650) 482-3040

DATE: 12/11/2018          **NEAL TANIGUCHI**          Clerk, by **ANTONIO R. GERONIMO**, Deputy
*(Fecha)*                                              *(Secretario)*                                  *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*

4. [ ] by personal delivery on *(date):*

[SEAL]

**SEVERSON & WERSON**
FEB 1 2019
Received

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

1  TED J. HANNIG (SBN 111691)
   tjh@hanniglaw.com
2  PAUL A. MANN (SBN 314299)
   paul@hanniglaw.com
3  **HANNIG LAW LLP**
   990 Industrial Rd. Suite 207
4  San Carlos, CA 94070
   Phone: (650) 482-3040
5  Fax: (650) 482-2820
6
7  Attorneys for Plaintiffs
8
9                   SUPERIOR COURT OF CALIFORNIA

10          COUNTY OF SAN MATEO – UNLIMITED JURISDICTION

11                                          **18CIV06625**

12  DANFORD FOUNDATION, a California        Case No. _____
    nonprofit public benefit corporation; and
13  KATHERINE F. FISHER, an individual,     **COMPLAINT FOR STAY PENDING**
                                            **ARBITRATION OF ENFORCEABILITY**
14                  Plaintiffs,             **OF ARBITRATION PROVISION,**
                                            **DAMAGES, AND DECLARATORY**
15       v.                                 **RELIEF CONFIRMING ARBITRATOR'S**
                                            **DECISION AS TO CERTAIN**
16  WELLS FARGO BANK, N.A., WELLS           **DEFENDANTS**
    FARGO & COMPANY, WELLS FARGO
17  FOUNDATION, KENT MANNINA, DEVON         1.  Violation of Bus. & Prof. Code § 17200
    SILVERA, an individual, and DOES 1 through   et seq.
18  20, inclusive,                          2.  Violation of the Racketeer Influenced and
                                                Corrupt Organizations Act (RICO)
19                  Defendants.             3.  Conspiracy to Violate RICO
                                            4.  Fraudulent Misrepresentation
20                                          5.  Negligent Misrepresentation
                                            6.  False Promise
21                                          7.  Negligence
                                            8.  Elder Abuse
22                                          9.  Declaratory Relief Confirming Arbitrator's
                                                Determination
23
24                                          **ARBITRATION & JURY TRIAL**
                                            **DEMANDED**
25
26                                          **Calendar preference requested [CCP § 36(a)]**
27

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040      COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }

ENDORSED FILED
SAN MATEO COUNTY

DEC 11 2018

Clerk of the Superior Court
By: ANTONIO R. GERONIMO
Deputy Clerk

SEVERSON & WERSON

FEB 07 2019

Received

1     Come now plaintiffs, Danford Foundation and Katherine F. Fisher, and allege:

2

### INTRODUCTION

3     1.     Plaintiff Danford Foundation, a community-based non-profit foundation, and Katherine F. Fisher, an elder of over 85 years of age, (collectively, "Plaintiffs") bring this action against Wells Fargo Bank, N.A., Wells Fargo & Company, Wells Fargo Foundation (collectively, "Wells Fargo"), Mr. Kent Mannina, an individual, Devon Silvera, an individual, and Does 1 through 20, inclusive, (collectively with Wells Fargo, "Defendants") to determine the enforceability of an arbitration provision as to certain defendants, and to recover losses and additional damages resulting from and related to fraudulent criminal conduct against Danford Foundation's bank account with Wells Fargo as well as Wells Fargo's misrepresentation of the safety and security of Danford Foundation's funds. Further, Danford Foundation, acting to recover the loss that would impact over 140 local charities it supports, alleges that Wells Fargo, as part of an improper banking practice and a criminal enterprise, created an environment where employees would not act in Danford Foundation's best banking interest.

### PARTIES

2.     Plaintiff Danford Foundation (sometimes, the "Foundation") is a local nonprofit public benefit corporation organized and existing under the laws of the State of California since 1982. It was founded by Redwood City residents Fred and Gladys Danford and is headquartered in the County of San Mateo. It exists solely to support non-profit charities and some governmental charitable and educational purposes.

3.     Plaintiff Katherine F. Fisher is an individual and resident of San Mateo County. She is over 85 years of age and is presently in failing health. She was a personal friend of the Danfords and served as the Executive Director and Secretary of Danford Foundation from its founding until on or about April 6, 2017, in which capacity she had broad financial powers over the Foundation. Except for the matters alleged herein, the Foundation suffered from no financial irregularity throughout the decades of her years of service and stewardship.

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

4.      Defendant Wells Fargo Bank, N.A., is a national banking association organized and existing under the laws of the United States of America. It is the primary operating subsidiary of defendant Wells Fargo & Company, a corporation headquartered in San Francisco and which, according to its public filings, is a "diversified financial services company" that provides "banking, investments, mortgage, and consumer and commercial finance" nationwide. Wells Fargo advertises its support and commitment to community non-profit entities and actively solicits their accounts as a planned business effort. At all relevant times, Wells Fargo transacted regular and sustained business in the County of San Mateo.

5.      Defendant Wells Fargo Foundation is a corporate foundation that engages in extensive activities throughout California.

6.      Defendant Kent Mannina is an individual. At all relevant times, Mr. Mannina was Wells Fargo's Foster City branch manager, and his acts and omissions occurred in San Mateo County. Mr. Mannina was not originally to be named as a defendant in this action. However, Wells Fargo informed the Foundation that he disputes the communications of Danford Foundation's entire Board of Directors regarding its meetings with him at the bank branch in Foster City. Based on this recently discovered effort to suppress the truth, Plaintiffs believe that his acts were intentional in misrepresenting the safety of the Foundation's funds when he convinced the Foundation not to close its bank account at Wells Fargo.

7.      Defendant Devon Silvera is an individual believed, at all relevant times, to have resided in California and New York. Plaintiffs are informed and believe Mr. Silvera carried out attacks against Danford Foundation's finances facilitated by Wells Fargo. Plaintiffs are informed and believe Doe 1 conspired with Mr. Silvera with respect to the attacks and at one point resided at the same address as Mr. Silvera. Plaintiffs are informed and believe that, at all relevant times, Doe 1 used a phone with a Florida caller ID.

8.      The true names and capacities of the defendants named herein as Does 1 through 20 are unknown to Plaintiffs, who therefore sue them under these fictitious names. Plaintiffs will amend this Complaint to add their true names and capacities if and when they become known.

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                         P a g e | 3

9.     At all relevant times, each defendant was the agent, principal, servant, employee, or alter ego of the remaining defendants, or acted with their consent, ratification and authorization, and in doing the acts hereinafter alleged, each defendant acted in such capacity with respect to the remaining defendants.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction to hear the subject matter of this Complaint pursuant to article 6, section 10, of the California Constitution and section 410.10 of the Code of Civil Procedure.

11.     This Court has personal jurisdiction over the individual defendants because Kent Mannina resides in California, and Devon Silvera and Doe 1 committed intentional acts aimed at California that caused harm they knew would be suffered in California. This Court has personal jurisdiction over Wells Fargo because Wells Fargo & Company is headquartered in California, each Wells Fargo entity continuously and systematically conducts business activities throughout California, and Plaintiffs' claims arise out of Wells Fargo's activities in California.

12.     Venue is proper in this Court because Danford Foundation opened and maintained its bank account with Wells Fargo in San Mateo County, and the injury alleged herein occurred in San Mateo County. (Code Civ. Proc., § 395, subd. (a), and § 395.5.)

13.     Unlimited civil jurisdiction is proper because the amount of relief requested is greater than $25,000.00.

## STATEMENT OF FACTS

14.     Danford Foundation supports over 140 charities, most of which are located on the San Francisco Peninsula. The Foundation has donated well over $5 million to support these charities' efforts in a wide range of areas such as the arts, medical research, disease prevention, religion, literacy, suicide prevention, low-income housing, unemployment, education, and youth protection and development. The charities support groups of people such as veterans; the homeless; battered women and abused children; people suffering from medical conditions such as blindness, loss of hearing, diabetes, leukemia and other cancers, lung disease, and multiple

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                    P a g e | 4

sclerosis; and victims of discrimination. The charities support the local historical society, numerous hospitals, boys and girls clubs, scouts, an organization that provides legal representation to minors in the court system, and a charity that supports alternative dispute resolution in the community. The charities also support numerous scholarship programs for local students and nurses. Many of these charities rely on donations from the Foundation to maintain their operations. A partial list of the charities supported by Danford Foundation is attached hereto as **Exhibit A**.

15.     Wells Fargo advertises that it "*is dedicated to helping non-profit organizations fulfill their mission by providing financial services that support the unique needs of charitable institutions," including "family foundations*." A true, correct, and highlighted copy of a page from Wells Fargo's website making this claim is attached hereto as **Exhibit B**. Recently, Wells Fargo advertisements include the assertion that it donates over $1 million a day to nonprofits, and in recent months it has pledged that it would give $400 million in cash to nonprofits in 2018 as proffered evidence that they support community non-profits. Danford Foundation's experience, as alleged herein, is radically different. Far from being a financial specialist for non-profits, Wells Fargo in fact placed the Foundation in harm's way numerous times. Further, it appears Wells Fargo is falsely advertising the activity of the Wells Fargo Foundation as if it were the direct activity of the Wells Fargo Bank, N.A. Wells Fargo derives commercial benefit from such false representations. Plaintiffs suspect Wells Fargo Bank, N.A., is taking tax deductions for donations to Wells Fargo Foundation as if they were charitable donations, when in reality Wells Fargo is not primarily using the Wells Fargo Foundation for charitable purposes but instead to promote its business.

16.     Plaintiffs are informed and believe that Wells Fargo Foundation is an alter ego of Wells Fargo and that any separateness of legal identity is a fiction such that such claimed legal distinction should be ignored for all purposes, including establishing Wells Fargo's net worth in order to calculate punitive damages.

17.     Danford Foundation maintained a checking account at Wells Fargo for more than a decade. Wells Fargo's heavily advertised support and commitment to community non-profit

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                                 P a g e | 5

1    entities, including family foundations, is part of the reason the Foundation maintained its account

2    with Wells Fargo. Another reason was the long-standing banking relationships had by various

3    directors with Wells Fargo, including the Foundation's President, Chief Executive Officer, Chair

4    of the Board, and General Counsel, Ted Hannig, who started his first bank account with Wells

5    Fargo's predecessor bank as a teenager in 1976 and has maintained a banking relationship with

6    Wells Fargo for over 50 years.

7        18.    Danford Foundation extends donations to charities exclusively by issuing checks.

8    The Foundation always makes out the grant checks to organizations; it never extends donations to

9    individuals. The average grant is about $6,000.00, and the Foundation very, very seldomly writes

10   checks in amounts over $50,000.00. The Foundation's practice is always to issue donations in

11   rounded dollar amounts, typically to the closest thousand dollars; the Foundation does not issue

12   donations in more precise, "odd" dollar amounts. At all relevant times alleged herein, the

13   Foundation's checks needed to bear the two signatures of the three authorized signatories on the

14   Foundation's Wells Fargo account, which consisted of Mr. Hannig; Ms. Fisher, then-Executive

15   Director and Secretary; and George Fisher, CPA, Director, and Chief Financial Officer. Checks

16   are generally authorized in advance at the Foundation's board meetings.

17       19.    Wells Fargo has had Mr. Hannig's and Ms. Fisher's signatures for many years and

18   has processed numerous checks bearing the signatures. In the case of Mr. Hannig, Wells Fargo has

19   had his signature since 1976 and has processed many thousands of his checks.

20       20.    Sometime during 2016, Ms. Fisher became a victim of fraud in her personal affairs,

21   which, Plaintiffs are informed and believe, included identity theft. Then, in or around August 2016,

22   someone changed the mailing address on Danford Foundation's Wells Fargo account to an address

23   in Long Island, New York, and requested that new checks be mailed to the address. The Foundation

24   neither conducted business in New York nor had any contacts there. Plaintiffs are informed and

25   believe that the mailing address on the account was changed and the request for the new checks

26   was made by the same person (or persons) who perpetrated the identity theft on Ms. Fisher. *No*

27   *person at Wells Fargo confirmed the unusual change of address to New York or the request for*

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                    P a g e  | 6

***new, blank checks with Mr. Hannig, Ms. Fisher, or George Fisher***. In fact, even though Danford Foundation is a local foundation with no connections whatsoever with New York, whether through its donations or otherwise, Plaintiffs are informed and believe Wells Fargo nevertheless fulfilled the request and sent checks to the Long Island, New York address. It is unclear whether the perpetrator (or perpetrators) of the fraud impersonated Ms. Fisher in a communication with Wells Fargo, hacked into the Foundation's account, or acted from within Wells Fargo itself. Plaintiffs' knowledge is limited, as Wells Fargo has never disclosed to Plaintiffs the facts it knows.

21.    Danford Foundation only learned that its account had been compromised because of an automated email sent to Mr. Hannig after the fact. The situation caused serious concern to the Foundation, as its assets exceeded $20 million, and occasionally very large sums of money were transmitted through the Foundation's account. The Foundation began doing everything it could think of to safeguard the account, including requesting Wells Fargo to put in place extra account protections.

22.    In November 2016, the entire board of directors of Danford Foundation met with Mr. Kent Mannina at Wells Fargo's Foster City branch to discuss the recent attempts to compromise the financial integrity of the Foundation; in particular, the board sought to update the Foundation's account and to again impress upon Wells Fargo the Foundation's concern regarding the need for increased financial security. This was especially important in November of 2016, as the Foundation was about to use its account to transmit an investment of $250,000. By that point, Mr. Hannig had obtained the New York address used by the criminals, which was for a residence on Long Island, New York. Mr. Hannig proposed to Mr. Mannina that the Foundation temporarily relocate its funds to another bank as a precautionary measure. Mr. Hannig had recently been offered a financial incentive from another bank nearby to relocate the Foundation's account, and the Foundation was intending to do so to protect the account, especially due to their anxious speculation that there might be "insider" participation at Wells Fargo. At that time the Foundation was unaware of Wells Fargo's unlawful practices with respect to opening new accounts for customers and its corollary: avoiding the loss of customer accounts. The Foundation was very

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                                      P a g e | 7

vulnerable given that it had approximately $20 million in assets using multiple accounts.

23.     Mr. Mannina acknowledged that "insider" participation could not be ruled out. Nevertheless, in response to the board's concerns and Mr. Hannig's proposal, Mr. Mannina assured the board that the Foundation did not need to move its compromised account to protect it from online fraud, impersonation, or check alteration because the account was, in his exact words, "on lockdown." He said Wells Fargo was "diligently" watching the account for fraudulent transactions, including efforts to change the address or contact information. Mr. Mannina further assured the board that everything possible was being done on Wells Fargo's end to protect the Foundation from fraud and other account abuse and that the Foundation's funds were "safe" where they were. Relying on these express assurances from the branch manager, the board acquiesced to keeping the Foundation's funds at Wells Fargo instead of moving them as Mr. Hannig had intended. *But for Mr. Mannina's active intervention, the account would have been moved*.

24.     Mr. Mannina warned the board that the account being on "lockdown" would lead to some "inconveniences." The board acknowledged that the additional protections were worth any inconvenience.

25.     At that time, Wells Fargo also obtained from Danford Foundation new signature cards for the account, and the Foundation signed additional paperwork. The Foundation requested that copies of the paperwork and signature cards be sent to the Foundation, but this was never done. Despite numerous written and verbal requests over the course of a year, the Foundation never received the then-applicable terms and conditions. The Foundation did not receive the applicable terms and conditions until Wells Fargo's counsel sent them to it in anticipation of this litigation. A true, correct, and redacted copy of the Minutes of the Board of Directors of Danford Foundation reporting on this meeting, previously provided to Wells Fargo, is attached hereto as **Exhibit C**.

26.     Following the board's meeting with Mr. Mannina, on November 23, 2016, Mr. Hannig provided by fax to Mr. Mannina the "positive pay" information for the account—that is, Wells Fargo was given in advance the account number, check number, and dollar amount of each check that would be presented for payment, which Wells Fargo could use to verify that checks

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                    P a g e | 8

were properly authorized and issued by the Foundation. Mr. Hannig had learned of the positive pay anti-check fraud system many years prior at a presentation by Wells Fargo to its private wealth management clients at Wells Fargo & Company's home office in San Francisco. Initially, Wells Fargo accepted listings of authorized checks and handled the account using this information to prevent fraud; this practice consisted of Mr. Hannig faxing a list of authorized checks to Mr. Mannina. Eventually, however, Mr. Mannina said the service would no longer be available to the Foundation and that such a measure was unnecessary given the precautions already taken with the account. The Foundation has since learned that "positive pay" is available to routine checking accounts at other banking institutions; in fact, the Foundation's new bank includes "positive pay" as a free service on the Foundation's ordinary checking account.

27.     Wells Fargo's representations regarding the safety of Danford Foundation's account were motivated by and part of a continuing, pervasive scheme at Wells Fargo to preserve and increase the number of customer accounts at Wells Fargo virtually at any cost, and by any means, legal or not, as bank executives used inflated information to increase Wells Fargo's stock prices and to affect bonus compensation as well as their stock holdings.

28.     Wells Fargo's representations and promises to Danford Foundation proved to be false. On or around March 13, 2017, someone deposited a check that had been "voided" by Danford Foundation in the amount of $87,670.00 at a bank in Valley Stream, Nassau County, New York. A true and correct copy of the check, dated March 8, 2017, is attached hereto as **Exhibit D**. For an institution like Wells Fargo, which promotes itself as having expertise in working with family foundations, the check shouted of fraud, especially given that Wells Fargo knew the Foundation's account had been compromised. More outrageously, Wells Fargo knew the specific threat to the account had come from the same place that the check was presented for deposit. The payee and amount on the check were noticeably altered. The handwriting on the check was different from all of the handwriting that had **ever** appeared on the Foundation's prior checks. The letter "D" in the payee, Devon Silvera, was very similar to the "D" in the endorsement signature, suggesting the same person wrote in the payee and endorsed the check. The handwriting on the

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                          P a g e | 9

front of the check was internally inconsistent, as if the person intentionally varied his or her writing. Also, the writing of the payee and the amount were either written by different persons or a person seeking to disguise his or her handwriting. **Contrary to the Foundation's consistent practice over its 35-year donation history, the payee was an individual instead of an organization, and the amount was not rounded to the nearest thousand. The Foundation had never in its long history issued a check to an organization in New York nor had a check negotiated in New York, nor had it ever issued an "odd amount" grant. Moreover, the amount of the check was nearly 15 times that of the average amount that appears on the Foundation's checks.**

29.     It is unclear how the criminals obtained the original, voided check. Ms. Fisher, an elder of over 85 years of age, frequented the Wells Fargo branch in Foster City to receive assistance with her banking needs and, during the relevant times, to deal with the persistent efforts of identity theft. Plaintiffs suspect that a representative of Wells Fargo, or a person claiming so to be, obtained the check from Ms. Fisher with her expectation that the check would shredded, never to be negotiated. Ms. Fisher is presently unable to recall the details of the voided check, as she was recently on an oxygen tank and often bedridden.

30.     On or around March 14, 2017, Danford Foundation was notified by Wells Fargo that its account was suspended for "suspicious activity." A director at the Foundation examined the Foundation's account online and saw the aforementioned check, which had already been posted. The director then called Wells Fargo to alert it that the check had not been issued by the Foundation. Wells Fargo confirmed this communication via email to the director on March 16, 2017, wherein Wells Fargo acknowledged "the recent loss or theft of [the Foundation's] checks on [the Foundation's] account." A true and correct copy of this email message is attached hereto as **Exhibit E**. Presumably, the altered check was the reason for Wells Fargo's suspension of the Foundation's account. Despite this, Wells Fargo went ahead and honored the check.

31.     The Foundation asked Wells Fargo to rescind the processing of the bad check. Wells Fargo did not do so. To this date, the Foundation does not know why, absent insider

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                                 P a g e | 10

1  participation, Wells Fargo declined to rescind the processing of the altered check. Later, the

2  Foundation again requested that Wells Fargo do a rescission. Wells Fargo responded by saying the

3  deposited funds could not be recovered at that point because the time window in which a check

4  deposited out of state could be reversed had already passed. The Foundation's account remained

5  charged in full. (As explained below, Wells Fargo later proved its statement regarding the time

6  window to be false by belatedly obtaining some funds left in the account of the crooks who

7  committed the check fraud in New York. Wells Fargo did not obtain the partial recovery until the

8  Foundation began making threats of legal action.)

9      32.    During this period of time, Mr. Mannina assured Danford Foundation, both in

10  person and over the phone, that the Foundation would "for sure" get its money back and that it

11  would get the money back "soon."

12      33.    On or around March 21, 2017, the Foundation filed a formal claim for fraud. The

13  Foundation submitted an affidavit of check fraud by Ms. Fisher declaring that the Foundation did

14  not issue the check. Mr. Mannina acted as the notary public, and he himself filled out Ms. Fisher's

15  affidavit, including a portion wherein he indicated the signature on the check was forged rather

16  than more appropriately indicating the check was altered. A true and correct copy of the Ms.

17  Fisher's Affidavit of Check Fraud, with her personal information redacted, is attached hereto as

18  **Exhibit F**. Mr. Mannina later emailed Mr. Hannig that he would need to submit an affidavit as

19  well because it appeared that the signatures on the check were valid. Mr. Hannig did so. At that

20  time, Wells Fargo had in hand the affidavit it prepared for Ms. Fisher's signature and apparently

21  decided the signatures were authentic. Yet in inviting Mr. Hannig to sign an affidavit, and

22  referencing Ms. Fisher's affidavit, Wells Fargo did not indicate in any way that the affidavit it had

23  prepared for Ms. Fisher needed to be updated.

24      34.    Danford Foundation shredded all of its remaining checks, checkbooks, and deposit

25  books, consistent with Wells Fargo's written instructions, but kept the original check register.

26  While shredding the account instruments, the Foundation learned that Wells Fargo had erroneously

27  issued checks to the Foundation with no other identification thereon other than the name of the

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                         P a g e | 11

Foundation's President, Mr. Hannig, as an individual and with no reference to the Foundation at all. This is the second known case of Wells Fargo printing checks with false information involving the Foundation.

35.     At the time of the check fraud, Danford Foundation had concerns that the fraud could have been an "inside job" at Wells Fargo. Wells Fargo has never adequately explained how the Foundation's mailing address was changed, why new checks were mailed to the New York address, or how Mr. Hannig's name, and not the name of Danford Foundation, appeared on a series of checks printed by Wells Fargo.

36.     Through subsequent revelations, Plaintiffs now are informed and believe that the alteration of the check, the modification of Danford Foundation's account, and the checks getting sent to New York were all perpetrated by the same group of individuals, which intentionally formed an unlawful enterprise or enterprises with the purpose of misappropriating funds from the Foundation and others. Plaintiffs are informed and believe that Wells Fargo participated in this enterprise by, among other things, being aware of the fraudulent conduct and/or permitting it to continue, fabricating stories to cover up internal fraud, creating a company culture that encouraged employees not to close down accounts when they should, and actively participating in the fraud, such as by making misrepresentations and manipulating records, in order to retain the Foundation's account and maximize profits.

37.     On or around April 6, 2017, Ms. Fisher received numerous phone calls at her home from individuals claiming they were involved in Danford Foundation's fraud claim. Ms. Fisher suspected with good reason that these individuals included the same perpetrator or perpetrators of the previous fraudulent incidents. At one point Ms. Fisher captured the phone number of the fraudsters from the caller ID. She provided the number to Mr. Hannig, and he immediately provided the number to Wells Fargo. On a telephone call with Wells Fargo, Mr. Hannig informed Mr. Mannina that he was "online" with his computer and about to pay a small fee for an online service to receive a reverse index of the phone number, which would reveal the owner of the phone number and his or her address. Mr. Mannina instructed Mr. Hannig over the interstate phone line

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                      P a g e | 12

not to do so, saying he should instead allow the police and Wells Fargo to handle the investigation and otherwise take care of the situation. Mr. Hannig closed out the online search form after Mr. Mannina's admonition and thus did not obtain the information.

38.     Plaintiffs are informed and believe that the calls made to Ms. Fisher on or around April 6, 2017, were also perpetrated, with the use of interstate wire communication, by individuals within the enterprise described above.

39.     Due to the altered check, the threat to Danford Foundation's financial integrity, and the losses suffered despite Wells Fargo's promises that the account was safe, Ms. Fisher resigned as Executive Director and Secretary of the Foundation on or around April 6, 2017, doing so with the active encouragement of Mr. Mannina. The Foundation was Ms. Fisher's sole source of employment. But for Wells Fargo and the fraud, Ms. Fisher would have kept her job of 36 years. In addition to the encouragement, Mr. Mannina suggested that Ms. Fisher resigning as trustee of her own revocable trust was the best banking solution to the situation; the fact that this idea originated from Mr. Mannina was confirmed by happenstance in a contemporaneous email. At the time the suggestion was made, it did not occur to Plaintiffs that Mr. Mannina's purpose was to maintain valuable customer accounts at any cost, and that he was doing so as part of an unlawful RICO enterprise. Had Mr. Mannina and Wells Fargo had Ms. Fisher's and the Foundation's best interests at heart, and had Wells Fargo adhered to its advertising about non-profit family foundations, Wells Fargo and Mr. Mannina would have instead recommended that the Foundation move its funds to another bank. So fundamental is this concept that even the Macy's Santa Claus in the 1947 movie Miracle on 34th Street knew the customer should be referred elsewhere. Such a recommendation would have insulated the funds from the crooks who had repeatedly attacked the Foundation and Ms. Fisher with the participation, whether witting or unwitting, of Wells Fargo. Ms. Fisher is now in frail health; Plaintiffs are informed and believe that Ms. Fisher was extraordinarily vulnerable to upset and distress over financial irregularity, and that Wells Fargo was aware of her condition. The acts and omissions pushed Ms. Fisher into a downward physical, mental, and emotional spiral with potentially dire consequences. Ms. Fisher is the classic "thin

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                          P a g e | 13

skulled" plaintiff in all respects.

40.     On or around May 3, 2017, after Danford Foundation had sent repeated follow-up requests regarding the fraud claim and Wells Fargo had repeatedly missed deadlines in which it promised to respond, Wells Fargo sent Danford Foundation a letter stating that it was denying the fraud claim because, in Wells Fargo's estimation, the Foundation "signed the check leaving the payee and/or dollar amount blank." This assertion is inconsistent with the facts. The check was altered after it was voided. Further, Mr. Mannina stated Mr. Hannig's declaration was needed because it appeared the signatures might be genuine and that the remainder of the check was a fraud. Yet Mr. Mannina found no fault in the declaration he had prepared for Ms. Fisher.

41.     After learning of Wells Fargo's denial of the fraud claim, Danford Foundation began asking for information regarding the steps required to proceed with a dispute with Wells Fargo. The Foundation was promised a re-review. However, on May 22, 2017, Wells Fargo informed the Foundation that it was still declining to restore the funds to the Foundation's account for the unauthorized check.

42.     After Wells Fargo denied Danford Foundation's claim, the Foundation continued sending many requests to multiple bank officers for information regarding Wells Fargo's dispute resolution procedures and for copies of the contractual paperwork Wells Fargo had the Foundation sign, including any provisions regarding arbitration. Wells Fargo's response was to put off the Foundation for many months instead of providing them. In addition, Wells Fargo frequently and willfully disregarded instructions from General Counsel for the Foundation that all communications with the Foundation be through him.

43.     On June 2, 2017, a representative at Wells Fargo told Danford Foundation's General Counsel that "if the foundation decides to pursue legal matters to resolve the claim. [*sic*] ***The foundation will need to go through the courts.***" By making its statement, Wells Fargo did not exercise its potential right to arbitration, but instead instructed the Foundation it would need to litigate to proceed, which constitutes an intentional waiver of any arbitration clause contained in Wells Fargo's adhesive contracts. Wells Fargo could have simply referred the matter to

Hannig Law LLP
090 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

arbitration instead. Plaintiffs are informed and believe Wells Fargo uses these sorts of words and practices to dissuade parties from pursuing their rights by making them believe dispute resolution will be extraordinarily expensive and difficult. Later, during discussions with the Wells Fargo's outside counsel, the outside counsel raised the legal issue of Mr. Hannig being both a witness in the case and legal counsel. This is only an issue in jury trial cases, and only if the representation is not waived by the client. The raising of this issue constitutes and admission by Wells Fargo that the matter would be presented to a jury. Plaintiffs intend to call Wells Fargo's counsel as a witness to this conversation as well as representations made regarding Mr. Mannina and his statements as to the check fraud and the Foundation's account.

44.     Mr. Mannina told Danford Foundation he did "not have the ability to monitor [the Foundation's] account or decide what items are paid or not." This was contrary to his representations made in November 2016 and at other times. For example, as alleged above and prior to this representation, Mr. Mannina had solicited and received numerous faxes from the Foundation, using interstate telephone lines, containing check information. A few of these transmissions are attached hereto as **Exhibit G**.

45.     As alleged above, Wells Fargo has exhibited a pattern and practice of opening accounts when it should not and failing to close down and terminate accounts when it should, all in the pursuit of its fraudulent business enterprise. It is well-documented that during the same time period Wells Fargo was misleading Danford Foundation about the security on its account, Wells Fargo was fined $185 million for conduct that was part of this continuing unlawful enterprise between 2011 and 2016 and that included fraudulently opening some 1,534,280 deposit accounts for existing customers and then transferring funds to those accounts from their owners' other accounts, fraudulently opening some 565,443 credit-card accounts, enrolling consumers in online-banking services that they did not request, and ordering and activating debit cards using consumers' information without their knowledge or consent. The fine included a penalty of $100 million against members of the enterprise from the Consumer Financial Protection Bureau (CFPB), which at the time was the largest such penalty the agency had ever issued. It was later revealed

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                              P a g e | 15

1    that the number of fraudulent accounts maintained was actually 3.5 million, substantially all of

2    which were opened and maintained utilizing some element of interstate commerce; it was further

3    revealed that Wells Fargo employees engaged in a pattern of fraudulently issuing insurance

4    policies. Wells Fargo set aside $142 million to settle a civil consumer class action lawsuit related

5    to the fraudulent scheme; it also agreed to pay $480 million to its shareholders to settle claims of

6    securities fraud alleging Wells Fargo executives had inflated its stock prices by using the fake

7    accounts to claim it was getting customers to sign up for multiple accounts.

8           46.    Wells Fargo has otherwise exhibited a pattern and practice of misleading customers

9    and disregarding its customers' interests in the pursuit of corporate profits. Since the

10   announcement regarding the $185 million fine, government agencies have fined the enterprise led

11   by Wells Fargo for other patterns of wrongful conduct, including retaliating against whistle-

12   blowers and unlawfully repossessing the cars of military service members, the latter being one of

13   the designated charitable areas the Foundation supports. In April 2018, the CFPB levied *a $1*

14   *billion fine*, the current record, against Wells Fargo for a pattern of charging consumers too much

15   over mortgage interest rate-lock extensions and for unfairly implementing a mandatory insurance

16   program that added costs to the balances of consumers' auto loans. Wells Fargo was forced to

17   refund customers who were charged for pet insurance and other products they did not fully

18   understand, and it set aside $285 million to refund foreign-exchange and wealth-management

19   clients for incorrect pricing and fees. It was revealed that ***Wells Fargo employees altered***

20   ***documents about business customers***. Then, on August 1, 2018, it was announced that Wells

21   Fargo would pay *a $2.09 billion penalty* over allegations that it engaged in a pattern of originating

22   and selling residential mortgage loans that included misstated income information as part of the

23   unlawful enterprise alleged by Plaintiffs herein. Also in August 2018, Wells Fargo said it was

24   "very sorry" for a computer glitch that caused hundreds of people to have their homes foreclosed

25   on. Most recently, in October 2018, tops executives at Wells Fargo have taken permanent leaves

26   of absence due to the countless scandals, which are symptomatic and emblematic of a lawbreaking

27   enterprise. Wells Fargo's employees have admitted the existence of the RICO enterprise in these

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                                    P a g e | 16

various nefarious banking activities.

47.     Wells Fargo's mistreatment of Danford Foundation is yet another instance of Wells Fargo's pattern of persistent misconduct.

48.     After several more months of repeated requests from Danford Foundation for information regarding Wells Fargo's dispute resolution procedures and copies of the Foundation's contractual paperwork, on or around October 16, 2017, an executive vice president at Wells Fargo contacted Danford Foundation. Wells Fargo informed the Foundation that, as it turned out, Wells Fargo was able to obtain a payment reversal from the bank account into which the altered check was deposited. This was contrary to Wells Fargo's earlier representation that it was unable to return funds deposited into the out-of-state bank. Due to Wells Fargo's delay in recovering the Foundation's funds, only $22,819.46 remained in the account. Although Wells Fargo returned that amount to the Foundation, it has not compensated the Foundation for the remaining funds lost due to the altered check and Wells Fargo's negligence or knowing participation in the theft. Wells Fargo again violated Foundation instructions by delivering the check to Mr. Hannig's residence, which has no connection with the Foundation and which area has routinely suffered from package thieves.

49.     Wells Fargo recently had an opportunity to demonstrate its business methods in a separate matter. On or around July 3, 2018, Mr. Hannig signed a law firm check for $5,000.00. His signature was nearly identical to the signature that appeared on the fraudulent check on the Foundation's account. Interestingly, on July 5, a Wells Fargo representative contacted Mr. Hannig regarding the law firm check. A true, correct, and redacted copy of the check is attached hereto as **Exhibit H**. The representative informed Mr. Hannig that Wells Fargo refused processing of the check because the signature appeared suspicious, and that in order for the check to be processed the bank would need Mr. Hannig's approval of his signature. The incident was immediately given a case number. Unlike with the Foundation account, Wells Fargo had not given any special attention or designation to the law firm account, and it was not subject to any heightened monitoring to protect it from fraud.

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                             P a g e | 17

50.     The representative who contacted Mr. Hannig on July 5, 2018, informed him that the source of the bank's concern was Mr. Hannig's signature. The Danford Foundation check, which had born the same signature pattern and was ostensibly issued from an account reported to be on "lockdown," was honored by Wells Fargo in the face of dramatic warning signs. By contrast, a routine law firm check, for an amount just under six percent of that of the Foundation's check and issued from an account not subject to any scrutiny or special attention, drew an immediate question and check negotiation blockage from Wells Fargo. The firm's check was presented at Wells Fargo by a Hispanic professional graphics designer. Unless Wells Fargo is engaged in racial profiling, the only explanation is that Wells Fargo misrepresented to Danford Foundation the scrutiny it would and was placing the Foundation's account under once the account had become compromised.

51.     After the date of the check alteration, Plaintiffs learned Wells Fargo has admitted its employees falsified documents as part of the unlawful enterprise alleged by Plaintiffs. On May 17, 2018, it was reported publicly that at the end of 2017 and the beginning of 2018, Wells Fargo employees altered information on the documents of business clients. This is contrary to Wells Fargo's recently launched ad campaign, which bears the tagline "Established 1852, Re-Established 2018," claims Wells Fargo has essentially changed its ways to correct past mistakes and avoid future ones, and claims specifically that Wells Fargo has recommitted itself to numerous charities similar or identical to the charities Danford Foundation supports. Plaintiffs allege that the unlawful enterprise led by Wells Fargo is alive and well and continues to act unlawfully despite the advertising campaign intended to convince regulators and customers to the contrary.

52.     Because Danford Foundation is a nonprofit public benefit corporation, the impact of the Foundation's injury will be felt by the charities the Foundation supports, which will ultimately experience a decline in their funding due to the loss. (See **Exhibit A**.) Wells Fargo was made aware of this impact but disregarded it. These are the very types of charities Wells Fargo advertises it is committed to supporting.

53.     Wells Fargo's net income in 2017 was $22.2 billion. Punitive damages must be

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                        P a g e | 18

1  significant enough to punish and deter future misconduct by Wells Fargo.

2      54.    Plaintiffs assert their claims against Wells Fargo are covered by an agreement

3  providing for such claims to be arbitrated, but only if the arbitrator determines Wells Fargo has

4  not waived any otherwise-applicable arbitration right as to each of Plaintiffs. The Plaintiffs request

5  the Court to stay this action pending any and all arbitration rulings. Should the arbitrator rule any

6  arbitration provision is currently binding and enforceable against Plaintiffs, or any of them, then,

7  as to the relevant defendants, this Complaint shall serve as the Plaintiffs' claims in such arbitration.

8  ## CAUSES OF ACTION

9  ### FIRST CAUSE OF ACTION

10  **(Violation of Bus. & Prof. Code § 17200 et al.)**

11  **(Brought by all Plaintiffs against all Defendants except Silvera and Does 1-5)**

12      55.    Plaintiffs re-allege and incorporate the foregoing paragraphs.

13      56.    California Business and Professions Code section 17200 et al. ("UCL") prohibits

14  unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

15      57.    California Business and Professions Code section 17204 allows a person injured by

16  the unfair business acts or practices to prosecute a civil action for violation of the UCL.

17      58.    Plaintiffs are each "persons" for purposes of the UCL under California Business

18  and Professions Code section 17201.

19      59.    Defendants have committed acts of unfair competition as defined by the UCL by

20  engaging in the unlawful, unfair, and fraudulent business practices and acts described in this

21  Complaint, including, but not limited to:

22      a.    Falsely advertising their dedication to helping non-profit organizations fulfill

23      their mission by providing them with supportive financial services, thereby

24      enticing family foundations like Danford Foundation to maintain accounts at

25      Wells Fargo;

26      b.    Misrepresenting to Plaintiffs that Danford Foundation's account was on

27      "lockdown";

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

c.  Misrepresenting that the Foundation did not need to move its account to a competitor of Wells Fargo in order to protect it from additional security breaches;

d.  Misrepresenting the ability of the Foundation's account to be monitored;

e.  Misrepresenting that everything possible was being done on Defendants' end to verify checks and the dual signatories;

f.  Promising to watch out for efforts to change the address and contact information on the Foundation's account and to otherwise carefully monitor account activity without any intention to fulfill that promise;

g.  Forcing customers into dilatory, evasive dispute procedures that do not provide them an adequate remedy; and

h.  Not adequately providing customers with information regarding the dispute procedures applicable to them.

60.   Defendants' conduct was "unlawful" because it violated the laws upon which the other causes of action are brought.

61.   Defendants' conduct was "unfair" because it improperly took advantage of Plaintiffs to obtain a benefit it was not entitled to, namely, the Danford Foundation account and the funds therein, and in so doing denied a business opportunity to a competing, local bank.

62.   Defendants' conduct was "fraudulent" because it misrepresented the status of the account and Defendants' efforts to protect Danford Foundation was fraud.

63.   As a direct and proximate result of the aforementioned acts and practices, Defendants were unjustly enriched by the retention of Danford Foundation's account and funds, as well as funds withheld from the Foundation due to its erroneously denied fraud claim.

64.   Business and Professions Code section 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

65.   Plaintiffs' success in this action will enforce important rights affecting the public

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

1    interest. A significant benefit will be conferred on a large class of persons, namely, the numerous

2    charities Danford Foundation supports and, in turn, all of the beneficiaries of these charities. There

3    is significant financial burden involved in pursuing this action, which must be pursued privately,

4    and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay

5    attorneys' fees from the recovery in this action. Attorneys' fees are thus appropriate pursuant to

6    Code of Civil Procedure section 1021.5 and otherwise.

7            66.     Wherefore, Plaintiffs request relief as hereinafter provided.

8                         **SECOND CAUSE OF ACTION**

9                **(Violation of RICO, 18 U.S.C., § 1961 et seq.)**

10               **(Brought by all Plaintiffs against all Defendants)**

11           67.     Plaintiffs re-allege and incorporate the foregoing paragraphs.

12           68.     Defendants are each "persons" within the meaning of 18 U.S.C. section 1961(3).

13           69.     An "enterprise" within the meaning of 18 U.S.C. section 1961(4) exists and

14    includes, at a minimum, Wells Fargo, including its employees, directors, and agents, and other

15    unknown individuals (the "Wells Fargo Enterprise"). At this time, Plaintiffs are uncertain of the

16    roles of Devon Silvera and Does 1 through 5 in the Wells Fargo Enterprise and the extent to which

17    their separate "enterprise" overlapped with the Wells Fargo Enterprise.

18           70.     Defendants and each of them conducted the affairs of the enterprise or its respective

19    enterprise through a pattern of racketeering activity in violation of 18 U.S.C. section 1962(c).

20    Plaintiffs originally had doubt as to whether Mr. Mannina was part of the enterprise. Plaintiffs

21    offered not to name Mr. Mannina if he was produced for deposition and his testimony truthfully

22    reflected the facts, but Wells Fargo's counsel, representing he was also serving as counsel for Mr.

23    Mannina individually (despite the inherent conflicts of interest), declined such opportunity on Mr.

24    Mannina's behalf. Wells Fargo's counsel also communicated that Mr. Mannina now disavows his

25    representations to the Foundation. These statements as to Mr. Mannina's anticipated testimony

26    further confirmed Plaintiffs' belief that Mr. Mannina is part of the enterprise

27           71.     The enterprises alleged herein utilized interstate commerce on numerous occasions

Hannig Law LLP
390 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                                    P a g e | 21

to implement their wrongful conduct, and the affairs of the enterprises affected interstate commerce through a pattern of racketeering activity. In particular, in furtherance of their fraudulent activities, the enterprises utilized the Internet, telephone, the United States mail, and other interstate commercial carriers.

72.     The enterprises alleged to exist herein are ongoing, continuous groups or units of persons and entities associated together for the common purpose of defrauding individuals to obtain personal gain and covering up their fraudulent activities. In the case of the Wells Fargo Enterprise, this included retaining clients and maximizing profits by altering client records and manipulating clients through fraudulent misrepresentations.

73.     While the members of the enterprises alleged herein have an existence separate and distinct from the enterprises, they are connected by contractual relationships, financial ties, and coordination of activities.

74.     The Wells Fargo Enterprise misrepresented Danford Foundation's account as being on "lockdown" and misrepresented the precautions taken with the account in order to retain it; notarized an Affidavit of Check Fraud after filling in material portions of it itself, including describing the check as "forged" rather than "altered"; instructed the Foundation not to reverse index the phone number of the fraudsters when the Foundation had obtained the number; and misrepresented Wells Fargo's ability to monitor the Foundation's account. This was in line with the Wells Fargo Enterprise's pattern and practice of altering information on the documents of business clients and other fraudulent activity with respect to Wells Fargo clients, including the unlawful pattern and practice of falsely opening and maintaining accounts.

75.     On Danford Foundation's altered check, the payee name was in all caps except for the first letter "e," rendering the first name as "DeVON." The only other place that peculiar pattern is observed is when a Wells Fargo's employee notarized Ms. Fisher's declaration and wrote the county of notarization as "SAN MATeO." The employee also indicated on the affidavit, prepared for a trusting elder, that the signature was forged when it in fact had been altered after being voided.

76.     By virtue of the above violations, Plaintiffs were harmed and are entitled to

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                                              P a g e  | 22

1  damages according to proof at trial.

2  **THIRD CAUSE OF ACTION**

3  **(Conspiracy to Violate RICO, 18 U.S.C., § 1962(d))**

4  **(Brought by all Plaintiffs against all Defendants)**

5  77.  Plaintiffs re-allege and incorporate the foregoing paragraphs.

6  78.  Defendants unlawfully have conspired, as set forth herein, to violate the provisions

7  of 18 U.S.C. section 1962(c) in violation of subdivision (d).

8  79.  By virtue of the above violations, Plaintiffs were harmed and are entitled to

9  damages according to proof at trial.

10  **FOURTH CAUSE OF ACTION**

11  **(Fraudulent Misrepresentation)**

12  **(Brought by all Plaintiffs against all Defendants except Silvera and Does 1-5)**

13  80.  Plaintiffs re-allege and incorporate the foregoing paragraphs.

14  81.  Defendants falsely advertised their dedication to helping non-profit organizations

15  fulfill their mission by providing them with supportive financial services, thereby enticing Danford

16  Foundation to maintain its account at Wells Fargo.

17  82.  Defendants, through the Wells Fargo branch manager, represented to Plaintiffs that

18  Danford Foundation's account was on "lockdown," that the Foundation did not need to move its

19  account to protect it from additional security breaches, that the account was of a type that could be

20  closely monitored for fraud, and that everything possible was being done on Defendants' end to

21  verify checks and the dual signatories. These representations were not true.

22  83.  Defendants represented that Danford Foundation's funds deposited into the New

23  York bank could not be recovered because the time window in which a check deposited out of

24  state could be reversed had already passed. This representation was false.

25  84.  Defendants knew their representations were false when making them, or at least

26  made them recklessly and without regard for their truth.

27  85.  Motivated by their fear of losing Danford Foundation as a customer, with assets in

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                        P a g e | 23

1 | the many millions of dollars, Defendants intended for Plaintiffs to rely on their statements in

2 | deciding whether to relocate Danford Foundation's funds to another bank.

3 |       86.    Plaintiffs' reasonably relied on Defendants' representations.

4 |       87.    Plaintiffs were harmed as a direct and proximate result of their reliance on

5 | Defendants' misrepresentations, including the loss of funds and Ms. Fisher being forced into

6 | retirement laboring under a belief she was somehow at fault for the loss; Ms. Fisher was pushed

7 | into a downward spiral of health prematurely and unnecessarily.

8 |       88.    Plaintiffs' reliance on Defendants' representations was a substantial factor is

9 | causing Plaintiffs' harm.

10 |       89.    Plaintiffs are entitled to damages according to proof at trial.

11 | **FIFTH CAUSE OF ACTION**

12 | **(Negligent Misrepresentation)**

13 | **(Brought by all Plaintiffs against all Defendants except Silvera and Does 1-5)**

14 |       90.    Plaintiffs re-allege and incorporate the foregoing paragraphs.

15 |       91.    Defendants falsely advertised their dedication to helping non-profit organizations

16 | fulfill their mission by providing them with supportive financial services, thereby enticing Danford

17 | Foundation to maintain its account at Wells Fargo.

18 |       92.    Defendants, through the Wells Fargo branch manager, represented to Plaintiffs that

19 | Danford Foundation's account was on "lockdown," that the Foundation did not need to move its

20 | account to protect from additional security breaches, that the account was of a type that could be

21 | closely monitored for fraud, and that everything possible was being done on Defendants' end to

22 | verify checks and the dual signatories. These representations were not true.

23 |       93.    Defendants represented that Danford Foundation's funds deposited into the New

24 | York bank could not be recovered because the time window in which a check deposited out of

25 | state could be reversed had already passed. This representation turned out to be false.

26 |       94.    Defendants had no reasonable grounds for believing the representations were true

27 | when they made them.

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
550-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                   P a g e | 24

95.     Motivated by their fear of losing Danford Foundation as a customer, Defendants intended for Plaintiffs to rely on their statements in deciding whether to relocate Danford Foundation's funds to another bank.

96.     Plaintiffs' reasonably relied on Defendants' representations.

97.     Plaintiffs were harmed as a direct and proximate result of their reliance on Defendants' misrepresentations, including the loss of funds and Ms. Fisher being forced into retirement laboring under a belief she was somehow at fault for the loss; Ms. Fisher was pushed into a downward spiral of health prematurely and unnecessarily

98.     Plaintiff's reliance on Defendants' representations was a substantial factor is causing Plaintiffs' harm.

99.     Plaintiffs are entitled to damages according to proof at trial.

## SIXTH CAUSE OF ACTION

### (False Promise)

**(Brought by all Plaintiffs against all Defendants except Silvera and Does 1-5)**

100.    Plaintiffs re-allege and incorporate the foregoing paragraphs.

101.    Defendants made a promise to Plaintiffs that they would watch out for efforts to change the address and contact information on Danford Foundation's account and to otherwise carefully monitor account activity.

102.    Defendants had no intention to perform this promise when they made it.

103.    Motivated by their fear of losing Danford Foundation as a customer, Defendants intended for Plaintiffs to rely on their promise in deciding whether to temporarily relocate Danford Foundation's funds to another bank.

104.    Plaintiffs' reasonably relied on Defendants' promise.

105.    Defendants did not watch out for efforts to change the address and contact information on Danford Foundation's account and to otherwise carefully monitor account activity.

106.    Plaintiffs were harmed as a direct and proximate result of their reliance on Defendants' promise, including the loss of funds and Ms. Fisher being forced into retirement

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                    P a g e | 25

laboring under a belief she was somehow at fault for the loss; Ms. Fisher was pushed into a downward spiral of health prematurely and unnecessarily.

107. Plaintiff's reliance on Defendants' promise was a substantial factor is causing Plaintiffs' harm.

108. Plaintiffs are entitled to damages according to proof at trial.

## SEVENTH CAUSE OF ACTION

### (Negligence)

**(Brought by all Plaintiffs against all Defendants except Silvera and Does 1-5)**

109. Plaintiffs re-allege and incorporate the foregoing paragraphs.

110. Defendants had a duty of care with respect to Danford Foundation to ensure that the Foundation's account was secure from fraudulent conduct, which duty was heightened when the financial integrity of the account became compromised.

111. Defendants breached their duty of care in multiple ways, such as by issuing checks with the name of Danford Foundation's President serving as the only identification thereon, issuing checks to a New York address when the Foundation had no contacts there, declining to provide the Foundation with positive pay, processing the altered check without verifying it despite significant warning signs, failing to rescind the processing of the altered check, discouraging Danford Foundation's President from reverse indexing the numerous calls placed to Ms. Fisher, failing to attach the bank account in New York until the majority of the funds were depleted, and failing to adequately monitor the Foundation's account.

112. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

113. Plaintiffs were harmed by Defendants' negligence and are entitled to damages according to proof at trial.

## EIGHTH CAUSE OF ACTION

### (Elder Abuse)

**(Brought by Katherine Fisher against all Defendants)**

114. Plaintiffs re-allege and incorporate the foregoing paragraphs.

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

115.    Ms. Fisher is over the age of 85 and therefore at all relevant times was an "elder" for purposes of section 15610 et al. of the Welfare and Institutions Code. Since the incidents complained herein, Ms. Fisher has been on an unexpected downward spiral and is now on an oxygen tank and receiving nursing assistance.

116.    Defendants knew that Ms. Fisher was on the board of Danford Foundation and knew that she was the Foundation's Secretary. Defendants also knew that Ms. Fisher was an elder, and that her condition made her vulnerable. Ms. Fisher frequented the Foster City branch on a regular basis and the employees there were very familiar with her, as well as the attempts to compromise her identity.

117.    Defendants' conduct, including the conduct of Wells Fargo's employees, amounts to elder abuse of Ms. Fisher. Wells Fargo, by and through Mr. Mannina, encouraged Ms. Fisher to be removed or to resign her positions, including as trustee of her own assets. As a consequence of the conduct, Ms. Fisher was forced to resign from her job and suffered additional harm. Ms. Fisher has suffered emotional distress due to the instructions of Wells Fargo and her belief that she was somehow at fault for the loss, as Wells Fargo failed to timely re-instate the funds it promised would be forthcoming; she has been pushed into a downward spiral of health prematurely and unnecessarily. The conduct and suggestion by Wells Fargo and Mr. Mannina were for the purpose of keeping the lucrative Foundation account and were part of the unlawful activity of the RICO enterprise of opening and maintaining customer accounts for the benefit of Wells Fargo and bank employees, rather than an act in the customer's best interest, and were inconsistent with the Wells Fargo advertising targeting non-profit family foundations.

118.    Defendants' conduct was a substantial factor in causing Ms. Fisher's harm.

119.    Ms. Fisher is entitled to damages according to proof at trial.

## NINTH CAUSE OF ACTION

### (Declaratory Relief)

### (Brought by all Plaintiffs against all Defendants except Silvera and Does 1-5)

120.    Plaintiffs re-allege and incorporate the foregoing paragraphs.

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                                    P a g e | 27

121.    Wells Fargo directed Plaintiffs to pursue legal recourse through the courts. Despite this and Wells Fargo's prior pattern of misrepresentation and improper conduct, including refusing for months to provide a copy of Wells Fargo's applicable terms and conditions, employing other dilatory conduct to avoid responding to Plaintiffs' demands, and raising questions about the Foundation's attorney serving as counsel and as a witness (which is only an issue in jury trials), Wells Fargo now inconsistently contends an arbitration agreement is in effect.

122.    Plaintiffs have never had any arbitration agreement with or that extended to Devon Silvera. Plaintiffs bring their claims to court because at least defendant Silvera and Does 1 through 5 are not subject to an arbitration agreement, and they have not consented to arbitration. Plaintiffs wish to preserve their rights to obtain relief against these individual defendants.

123.    Given the nature of the enterprise alleged herein, Plaintiffs believe that the claims against Defendants cannot be severed and tried separately.

124.    Due to its conduct, including expressly directing Plaintiffs to the courts for any relief and engaging in dilatory and avoidance tactics in responding to the Foundation's dispute regarding the altered check, Wells Fargo has waived any rights it would otherwise have to compel this dispute to arbitration.

125.    An actual controversy has arisen between Danford Foundation and Wells Fargo concerning whether arbitration or court proceedings are appropriate in this case.

126.    Plaintiffs request that an arbitrator make the preliminary determinations regarding the parties' respective rights and duties pertaining to arbitration, including the issues of whether Plaintiffs' claims against Devon Silvera and Does 1 through 5 can be severed and whether Wells Fargo's conduct deprives it of the further benefit of any purported arbitration clause, and that the Court stay the case pending these determinations. Should the arbitrator rule that further arbitration is required in the dispute with Wells Fargo, then this Complaint shall serve as the complaint and demand in such arbitration.

///

///

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF
{DNF:5624:TJH:H0196317.DOCX.6 }                                                    P a g e | 28

**WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:**

A.  For compensatory damages according to proof at trial;

B.  For treble damages under the applicable causes of action;

C.  For prejudgment interest on the amount of any damages awarded;

D.  For punitive damages under all applicable causes of action in an amount that represents the greater of at least one percent of either Wells Fargo's net income or its net assets so as to sufficiently deter Wells Fargo from continuing with its wrongful practices in the future;

E.  For attorney's fees and costs under all applicable causes of action, including for bringing this action in the capacity of private attorney general;

F.  For a determination in arbitration of whether the arbitration clause is in effect or has been waived, and whether the claims against Devon Silvera and Does 1 through 5 may be severed;

G.  Should the arbitrator rule the arbitration clause is applicable and is binding on Plaintiffs, or any of them, and rule that the claims against Defendants are severable, Plaintiffs pray for a staying of this case pending the outcome of arbitration; and

H.  For such other and further relief as the court may deem just and proper, including declaratory and injunctive relief.

Dated: _Dec. 11_, 2018

HANNIG LAW LLP

By: _Ted J. Hannig_

TED J. HANNIG
Attorney for Plaintiffs

Hannig Law LLP
990 Industrial Road
Suite 207
San Carlos, CA 94070
650-482-3040

COMPLAINT FOR STAY PENDING ARBITRATION, DAMAGES, AND DECLARATORY RELIEF

{DNF:5624:TJH:H0196317.DOCX.6 }                                                Page | 29

# EXHIBIT A

**Charitable organizations supported by Danford Foundation**

10,000 Degrees

Abilities United

AIDS Lifecycle

Aim High

Alzheimer's Association, Memory Walk

American Cancer Society, Oakland

American Diabetes Association

American Heart Association, Burlingame

American Institute for Cancer Research

American Red Cross Bay Area Chapter

Arthritis Foundation of North California, San Francisco

Bay Area Cabaret

Bay Area Jewish Healing Center

Boy Scouts - Sea Scouts

Boy Scouts, Pacific Skyline

Breast Cancer Emergency Fund

Breathe California – San Mateo & San Francisco Counties

Broadway By the Bay, Youth, San Mateo

California Inclusive Sailing

California School for the Blind

Camping Unlimited

Canine Companions for Independence

Casa de Asilo

Casa de Redwood Foundation, Redwood City

CASA of San Mateo County

Children's Health Council

Colon Cancer Alliance

CORA

Coral Restoration

Daly City Library

Dancers' Group (Post Ballet)

Daughters of Saint Paul

Disabled American Veterans, Cincinnati, Ohio

Dominican Sisters of Mission San Jose

DRED

Earlier

Easter Seals Bay Area

El Crystal Elementary School, San Bruno

Exponent Philanthropy

Faith Hospice

Floating Doctors

Foster City Community Center

Foster City Village

Foster City Youth & Teen Foundation

Friends of Foster City Library

Girl Scouts - Sea Scouts

Girls Scouts - Troop 62678

Give & Surf

GLAAD

Gleason Scholarship Fund

Guide Dogs for the Blind, San Rafael

Habitat for Humanity Greater San Francisco

Hearing and Speech Center North California.

HEART of San Mateo County

Helpers of the Mentally Retarded

Help for Wounded Warriors

Hillbarn Theatre

Ingrid B. Lacy

Jewish Community High School of the Bay

Junior Giants

Juvenile Diabetes Research Foundation, San Francisco

Kainos Home & Training Center, Redwood City

KQED, San Francisco

Larkin Street Youth Services

Leukemia & Lymphoma Society, SF

LifeMoves, Menlo Park

Lions Eye Foundation, San Francisco

Maitri

Marine Science Institute, Redwood City

Mills-Peninsula Hospital Foundation, San Mateo

Mission Hospice & Home Care

Miss Redwood City San Mateo County Scholarship Organization

Mouse Squad of California

Muscular Dystrophy Association, San Mateo

National Kidney Foundation

National Multiple Sclerosis Society

National Ovarian Cancer Coalition

Notre Dame de Namur University

Notre Dame Elementary School

Notre Dame High School

One World Children's Fund

Our Lady of Mount Carmel School

Pacific Legal Foundation

Parkside Intermediate School

Pathways Hospice Foundation

Peninsula Boys and Girls Club

Peninsula Conflict Resolution Center

Peninsula Family Services

Peninsula Social Club Scholarship Foundation

Peninsula Symphony Association, San Mateo

Peninsula Volunteers, Menlo Park

Peninsula Youth Sailing Foundation

Peninsula Sunrise Rotary Club

Planet Hope

Police Activities League, Redwood City

Rebuilding Together

Redwood City Community Theater

Redwood City Library Foundation, #1

Redwood City Rotary Charitable Foundation

Richmond/Ermet AID Foundation (REAF)

RIDE

Rollingwood Elementary School

Ronald McDonald House, Palo Alto

Saint Anthony Foundation, Menlo Park

Saint Anthony Foundation, San Francisco

Saint Dominic Church, San Francisco

Saint Francis Center of Redwood City

Saint Luke's in the Desert, Tucson, Arizona

Saint Pius Church, Redwood City

Saint Pius School, Redwood City

Saint Vincent de Paul, Santa Clara County

Saint Vincent de Paul, San Mateo

Salvation Army, Redwood City

Salvation Army, San Francisco for San Bruno/San Mateo

Samaritan House, San Mateo

San Mateo County Health Foundation

San Mateo Historical Association, Redwood City

San Mateo Sheriff's Office

Santa Clara University

Sequoia Awards, Redwood City

Sequoia High School

Sequoia Hospital Kennett Nursing Scholarship

Sequoia Hospital Foundation, Redwood City

Sequoia Village

Service League of San Mateo County

SF Center

Shanti

Sheriff's Activity League

Shriners Hospitals for Children

Special Olympics of North California, Pleasant Hill

St. Francis Foundation

StarVista

Susan G. Komen for the Cure

Saint Vincent de Paul Catherine's House, SM

Tapestry Church

Toys for Tots

Trevor Project

Variety Children's Charity of North California

Veterans Memorial Senior Center

Women's Recovery Center, Burlingame

YBCA

YMCA of the Mid-Peninsula

Young Dreamer Network

# EXHIBIT B



Small Business        Online Banking with *Wells Fargo Business Online* ⃝        Solutions by Industry        **Non-Profit Organizations**

# Non-Profit Organizations

Wells Fargo is dedicated to helping non-profit organizations fulfill their mission by providing financial services that support the unique needs of charitable institutions. Wells Fargo works with the full spectrum of non-profit organizations including:

- Educational, environmental and scientific organizations
- Religious groups
- Health and human service providers including children's organizations
- Cultural and artistic institutions
- Membership groups such as credit unions, fraternal organizations and homeowners associations
- Family foundations

Wells Fargo itself has a long history of community involvement. Through the Wells Fargo Foundation, we support a vast number of non-profit causes — and understand the needs of non-profit entities from the inside out. The financial strength of Wells Fargo is validated further by its triple-A credit rating, giving you confidence that your organization is working with a financially-sound bank rooted in each community that it serves. You can apply on line for many of these services, others are more complex and we recommend speaking with one of our bankers. You can apply in person or call **1-800-416-8658**.

## Business Banking Services

Like any business, non-profit organizations need banking services to help manage cash flow and to maximize the return on savings and investments. Whether your non-profit is small or large, Wells Fargo's cash management services can meet your needs cost-effectively. Compare our business checking accounts and savings accounts.

Wells Fargo Business Online ⃝ Banking provides online access to all your accounts. Monitor balances, transfer funds, and make payments online anytime, anywhere. Our online statements, check images and view-only access, so that you can give access to someone else to reconcile your accounts, make this an unparalleled service.

While many non-profits are run entirely through the efforts of dedicated volunteers, some groups employ paid staff. If you outsource your payroll, Wells Fargo Payroll Services can provide these services. If you manage your payroll in-house, or via a bookkeeper, our online Direct Pay service is a cost-effective, efficient solution, giving you more time to focus on your mission.

## Retirement Plans for Non-Profits

Wells Fargo offers a variety of retirement plans suitable for non-profit organizations. These include 403(b) Plans designed specifically for qualified non-profit entities. 403(b) plans allow employees to defer portions of their salaries in order to invest in mutual funds and annuities for retirement. For assistance in determining which plan is best for your organization and for setting up a plan, call **1-866-243-0931**.

## Increasing Donations and Investment Management

Non-profits rely upon donations from individuals and foundations and upon investment income to fund their activities and further their mission.

Many non-profits accept credit and debit card payments for contributions. Not only is this useful for one-time gifts but it can enable recurring contributions with minimal effort from the donor and the receiving organization. Whether you wish to accept credit or debit card contributions online, over the phone, or in person, Wells Fargo Merchant Services can make this possible.

## Philanthropic Services

Wells Fargo Philanthropic Services can help nonprofit organizations focus on what matters most—their mission.

To improve the operation of your organization, we integrate investment management, fiduciary administrative services, governance advice, compliance, and reporting services—all specifically designed for nonprofit groups. You can choose some, or all, of our services to help ease the day-to-day obligations that you face.

Our specialists work with you to:

- Understand your goals and needs
- Manage your assets effectively
- Coordinate your administration
- Manage donor relations
- Accept non-financial asset donations such as real estate, oil, gas, and minerals

# EXHIBIT C

# MINUTES OF

# THE BOARD OF DIRECTORS OF

# DANFORD FOUNDATION

### *a California non-profit corporation*

## PLACE; ATTENDANCE

A meeting of the Board of Directors was held as follows:

| | | |
|---|---|---|
| **Type of meeting** | : | **Regular Meeting** |
| **Date** | : | **January 17, 2017** |
| **Time** | : | **10:00 a.m.** |
| **Place** | : | |



The following Directors were present (alphabetical):

George Fisher
Katherine F. Fisher
Ted J. Hannig

The following persons officiated at the meeting:

Chair of meeting:          Ted J. Hannig, President
Secretary of meeting:   Katherine Fisher

## QUORUM

## NOTICE OF MEETING

## APPROVAL OF THE MINUTES

████████████████████████████████████████████████████

## FINANCIAL REPORT

### Bank Account Protection

The Board reviewed attempts to compromise the financial integrity of the Foundation and its Director.  Wells Fargo has been alerted and asked to carefully watch over account activity.  Board members will meet with the Bank at the Foster City Branch to update accounts and again impress upon the Bank the directors' concern for increased bank financial security on the accounts. In November of 2016 the entire Board met with the branch manager and he assured the Foundation that it need not move its account to protect its account from online fraud, impersonation or check alteration and that the bank would watch out for efforts to change the banking address or contact information. The Board was highly concerned due to the possibilities of fraud in its various forms. Given the assurance by Wells Fargo, the Board elected to keep funds at Wells Fargo and discussed future activity. Mr. Kent Mannina did explain the account is blocked, and it may cause some inconvenience. The Board agreed the inconvenience would be worth the additional protection, and Mr. Mannina assured the Board everything possible was being done from the bank's end to verify checks and the dual signatories. Mr. Hannig offered to provide the bank with lists of authorized payees and amounts as he has in the past but the bank did not feel this was necessary.

Mr. Mannina stated that there are other account types that would explore as option for the Foundation but there may be additional costs if those accounts are available.

### Balance Sheet

████████████████████████████████████████████

### Revenue Over Expenditure

████████████████████████████████

## PRESENTATIONS ON GRANTS AND INVESTMENTS



# EXHIBIT D

**Operation Image Browser 2.0**

| Site | VIEWPOINTE | Paid Date | 03142017 | Serial No | 6118 |
|------|-----------|-----------|----------|-----------|------|
| Routing | ▆▆▆▆ | Account | ▆▆▆▆ | PC | 001051 |
| Amount | 87670.00 | Sequence | 8419154648 | Capture Source | 00007238 |

**Front Black & White Image**



**Back Black & White Image**

# EXHIBIT E

From: **Wells Fargo Online** alerts@notify.wellsfargo.com
Subject: **Please read to help prevent unauthorized use of your account.**
Date: Mar 16, 2017 at 2:17:12 AM
To: **<george-fisher@sanbrunocable.com>** george-fisher@sanbrunocable.com

Wells Fargo                                                          wellsfargo.com

Dear Customer:

Thank you for reporting the recent loss or theft of your checks on your account ending in 0301. Please review the following information carefully to help protect your account and prevent unauthorized use.

**If you have already opened a new account with us, please take the following actions:**

Stop writing checks and destroy any remaining checks on your closed account.

Contact us if you do not receive checks for your new account within 10 business days. Keep your reference number on hand for faster, easier assistance.

Be sure to verify that your new account is set up for *Wells Fargo Business Online*© Banking and Business Bill Pay, if you use these services. Simply sign on to Business Online Banking at wellsfargo.com/biz to confirm that your new account is reflected. If your new account is not enrolled, please follow the instructions for re-enrolling in these services.

Please note that we will attempt to contact any companies that automatically transfer funds to and from your account (such as payroll direct deposit, phone company payments, loan payments, or insurance payments). To ensure timely posting of these transfers, you may also want to contact these companies directly and provide them with your new account number.

**If you have not closed your account and opened a new account, we encourage you to do so as soon as possible by visiting your nearest Wells Fargo banking location or calling National Business Banking Center at** 1-800-CALL-WELLS.

For your protection, checks that do not appear to be written and/or authorized by you will be returned as "Altered/Fictitious" the same day we receive them unless we have your prior instruction to process them. This process of returning checks written on your account will continue for 90 days from the date you first advised us of the loss or theft of your checks. If you opened a new account, at the end of 90 days, any checks or electronic transactions received against your closed account will be returned with a notation of account closed.

We realize this may be a difficult experience for you. Please be assured that we are here to help you. If you have any questions, call National Business Banking Center at 1-800-CALL-WELLS, 24 hours a day, 7 days a week.

Thank you for banking with Wells Fargo.

Wells Fargo Bank

wellsfargo.com | Fraud Information Center

Please share the content of this notice with all account owners.
Please do not reply to this automated email.
Wells Fargo Bank, N.A.   Member FDIC

# EXHIBIT F

**Affidavit of Check Fraud**





| NAME OF CLAIMANT | WELLS FARGO ACCOUNT NUMBER | DATE |
|---|---|---|
| DANFORD FOUNDATION | ▇▇▇▇▇▇▇ | 03/22/2017 |

| ☑ Signature Forged | ☐ Endorsement Forged | ☐ Counterfeit | ☐ Altered | ☐ Unauthorized Draft | ☐ Other |
|---|---|---|---|---|---|
| My signature on the face of the check(s) listed below is a forgery. I did not sign the check(s) and I did not authorize the signature. | My endorsement on the reverse of the check(s) listed below is a forgery, missing, or otherwise incorrectly endorsed. I did not sign the check(s) and/or I did not authorize the signature(s). | The check(s) are an imitation of checks drawn on my account. I did not create, sign, or authorize the creation of signatures of the checks listed below. | The check(s) listed below have unauthorized alterations. I did not alter the amount, nor have I directly or indirectly authorized anyone to make alterations to the check(s). | I did not authorize or otherwise approve the creation or payment of this item. | (Please Explain) |

**lease include the following information for each fraudulent check:**

- If the check was altered, please use two lines and include the 'as written' check information, as well as the 'as paid' information.
- If you are claiming more than 1 check as "Endorsement Forged", please make photo copies of this form and submit each check with a separate signed affidavit page.
- If you have more than 4 checks to list (except Endorsement Forged), please use page 2 of this affidavit or attach a separate sheet.

| Check # | Date | Amount | Made payable to |
|---|---|---|---|
| 6118 | 03/14/2017 | $87,670.00 | Devon Silvera |
| Check # | Date | Amount | Made payable to |
| Check # | Date | Amount | Made payable to |
| Check # | Date | Amount | Made payable to |

heck here if you have included additional items on an attached sheet or on the back of form: ☐

**Y SIGNING BELOW, YOU ARE MAKING THE FOLLOWING DECLARATIONS:**

CLAIM TOTAL:
$ 87,670. 00

- I did not receive any benefit or value from the proceeds of the check(s) listed above.
- I have not arranged with the person(s) who misused the check(s) listed above to be reimbursed for any portion of the proceeds of the check(s).
- I will cooperate in any investigation, promptly disclose any information requested by the bank, and if necessary, cooperate fully with any prosecution.
- I will testify to the truth of these statements in any case which may result from this affidavit.
- All information I have provided in this document is true.

**DECLARE UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATED IS TRUE.**

| Signature of Claimant (If a Business account, include your Title) | Date 3/27/17 | Place Notary Stamp Here |
|---|---|---|
| Address of Claimant ▇▇▇▇▇▇▇ | Phone Number ▇▇▇▇ | KENT K. MANNINA COMM. #2058389 NOTARY PUBLIC - CALIFORNIA ALAMEDA COUNTY My Commission Expires 02/17/2018 |

**AYEE/ENDORSER SIGNATURE   (FORGED ENDORSEMENT CLAIMS ONLY)**

| Signature of Payee/Endorser (If a Business account, include your Title) | Date |
|---|---|

**NOTARY INFORMATION**
State of: CALIFORNIA    County of: SAN MATEO
Subscribed and sworn before me this 27TH day of MARCH ,(year) 2017
My commission Expires 2/17/2018

Signature of Notary Public

M02017-03-22--134511-384000*

**WELLS FARGO**

# Questionnaire of Check Fraud

ease answer the following questions to assist us in our investigation:

When and how did you discover the fraud in your account?

3/15/17 notified by Wells Fargo Bank

When and how did you report the fraud to Wells Fargo?

3/20/17 Banker report to fraud department

Have you reported the fraud to law enforcement? If yes, please provide the agency, investigator name (if assigned), and the case number.

No

What is your Drivers License number and State of issue and expiration date?

expired



# Questionnaire of Check Fraud

) Do you know who might have committed the fraud?
If yes, please list their name and relationship to you here)

*No*

) Please give details about this person including addresses and phone numbers. If a current or former employee; list employment dates.

*N/A*

) Explain how the person that committed the fraud might have gained access to your account information.

*N/A*

) Please tell us anything else that might help us with the investigation.

*N/A*

---

## DECLARE UNDER THE PENALTY OF PERJURY THAT THE ABOVE STATED IS TRUE.

ignature of Claimant (If a Business account, include your Title)

*Catherine F Fisher*

Date  *3/27/17*

ddress of Claimant

Phone Number

# EXHIBIT G

```
                TRANSMISSION VERIFICATION REPORT
```

```
                                      TIME  : 11/30/2016 16:26
                                      NAME  : HANNIG LAW FIRM LLP
                                      FAX   : 6504822820
                                      TEL   : 6504823040
                                      SER.# : BROM6J585139
```

```
   DATE,TIME               11/30  16:26
   FAX NO./NAME            16503453050
   DURATION               00:00:35
   PAGE(S)                03
   RESULT                 OK
   MODE                   STANDARD
                          ECM
```



Hannig Law

# HANNIG LAW LLP

990 Industrial Rd., Suite 207, San Carlos, CA 94070

**DATE:**

11 / 30 /2016

# FAX COVER SHEET

**To:** KENT K MANNINA

**Phone:** (650) 345-1012

**Company Name:** Wells Fargo Foster City

**Fax:** (650) 345-3050

**From:** Ted J. Hannig

**Phone:** (650) 482-3040          **Cell:** (650) 269-3020

**Company Name:** Hannig Law, LLP



Hannig Law

# HANNIG LAW LLP

990 Industrial Rd., Suite 207, San Carlos, CA 94070

**DATE:**

11 / 30 /2016

# FAX COVER SHEET

**To:** KENT K MANNINA

**Phone:** (650) 345-1012

**Company Name:** Wells Fargo Foster City

**Fax:** (650) 345-3050

**From:** Ted J. Hannig

**Phone:** (650) 482-3040          **Cell:** (650) 269-3020

**Company Name:** Hannig Law, LLP

**Fax:** (650) 482-2820

**Number of Pages:** 3

**Note:** Here are the checks we will be issuing. Ted

# DANFORD CHECKS

## 2nd. Qtr. Meeting          Recived on 11/23/16

| PAYEE | AMOUNT | CHECK No. | DATE |
|---|---|---|---|
| Breathe California | $3,000.00 | 2001 | 11/17/2016 |
| Casa de Redwood Foundation | $5,000.00 | 2002 | 11/17/2016 |
| Disabled American Veterans | $5,000.00 | 2003 | 11/17/2016 |
| Dominican Sisters of Mission San Jose | $3,000.00 | 2004 | 11/17/2016 |
| Exponent Philanthropy | $750.00 | 2005 | 11/17/2016 |
| Foster City Youth and Teen Fundation | $2,500.00 | ------------- | ------------- |
| Foster City Community Center | $2,500.00 | ------------- | ------------- |
| Guide Dogs for the Blind | $15,250.00 | 2006 | 11/17/2016 |
| Maitri | $2,500.00 | 2007 | 11/17/2016 |
| Mouse Squad of California | $10,000.00 | 2008 | 11/17/2016 |
| Notre Dame Elementary School | $5,000.00 | 2009 | 11/17/2016 |
| Notre Dame High School | $5,000.00 | 2010 | 11/17/2016 |
| Notre Dame de Namur University | $5,000.00 | 2011 | 11/17/2016 |
| Our Lady of Mount Carmel School | $3,000.00 | 2012 | 11/17/2016 |
| Parkside Middle School | $23,000.00 | 2013 | 11/17/2016 |
| Peninsula Family Services | $2,500.00 | 2014 | 11/17/2016 |
| Rebuilding Together | $5,000.00 | 2015 | 11/17/2016 |
| REAF | $5,000.00 | 2016 | 11/17/2016 |
| Rollingwood Elementary School | $7,500.00 | 2017 | 11/17/2016 |
| Ronald McDonald House | $5,000.00 | 2018 | 11/17/2016 |
| Saint Anthony Foundation | $10,000.00 | 2019 | 11/17/2016 |
| Saint Anthony Foundation | $10,000.00 | 2020 | 11/17/2016 |
| Saint Dominic Church | $10,000.00 | 2021 | 11/17/2016 |
| Saint Vincent de Paul | $7,500.00 | 6012 | 11/17/2016 |
| Salvation Army | $5,000.00 | 6013 | 11/17/2016 |
| Salvation Army | $5,000.00 | 6014 | 11/17/2016 |
| Samaritan House | $10,000.00 | 6015 | 11/17/2016 |
| San Mateo County Health Foundation | $5,000.00 | 6016 | 11/17/2016 |
| Sequoia Awards | $30,000.00 | 6017 | 11/17/2016 |
| Service League of San Mateo County | $5,000.00 | 6018 | 11/17/2016 |
| Saint Vincent de Paul Catherine's House | $3,000.00 | 6019 | 11/17/2016 |
| Veterans Memorial Senior Center | $3,000.00 | 6020 | 11/17/2016 |
| YMCA of the Mid-Peninsula | $5,000.00 | 6021 | 11/17/2016 |

## 2nd. Qtr. Meeting

| PAYEE | AMOUNT | CHECK No. | DATE |
|---|---|---|---|
| LA BLAST | $250,000.00 | 6010 | 11/16/2016 |

# EXHIBIT H



## Transaction Search

## View Images



**HANNIG LAW**
GENERAL ACCOUNT
990 INDUSTRIAL ROAD, SUITE 207
SAN CARLOS, CA 94070

12917

11-4288/1210                    12917

07/03/18

*FIVE THOUSAND AND 00/100 DOLLARS*

DATE                 AMOUNT

******$5,000.00

PAY
TO THE
ORDER
OF

AUTHORIZED SIGNATURE

⑈0⑈2917⑈

— **Image Details**



**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Ted J. Hannig (SBN 111691); Paul A. Mann (SBN 314299)<br>Hannig Law LLP<br>990 Industrial Road, Suite 207<br>San Carlos, CA 94070<br>TELEPHONE NO.: (650) 482-3040     FAX NO. *(Optional):* (650) 482-2820<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs Danford Foundation and Katherine F. Fisher | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City 94063
BRANCH NAME:

PLAINTIFF/PETITIONER: Danford Foundation and Katherine F. Fisher

DEFENDANT/RESPONDENT: Wells Fargo Bank, N.A., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV06625 |
|---|---|

TO *(insert name of party being served):* Kent Mannina

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 4, 2019

Ted J. Hannig
_____
(TYPE OR PRINT NAME)                 ▶ (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]   A copy of the summons and of the complaint.
2. [✓]   Other *(specify):*
         Notice of Case Management Conference

*(To be completed by recipient):*

Date this form is signed: 2/21/19

M. Wroin
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       ▶ (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                       ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

1

**PROOF OF SERVICE**
*Danford Foundation, et al. v. Wells Fargo Bank, N.A., et al.*
San Mateo County Superior Court Case No. 18CIV06625

2

3      At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of San Francisco, State of California.  My business address is One
4   Embarcadero Center, Suite 2600, San Francisco, CA 94111.

5      On February 22, 2019, I served true copies of the following document(s):

6   **NOTICE AND ACKNOWLEDGMENT OF RECEIPT – KENT MANNINA**

7   **NOTICE AND ACKNOWLEDGMENT OF RECEIPT – WELLS FARGO BANK, N.A.**

8   **NOTICE AND ACKNOWLEDGMENT OF RECEIPT – WELLS FARGO & COMPANY**

9   **NOTICE AND ACKNOWLEDGMENT OF RECEIPT – WELLS FARGO FOUNDATION**

10   on the interested parties in this action as follows:

11   Ted J. Hannig, Esq.                          Attorneys for Plaintiffs
Paul A. Mann, Esq.
12   HANNIG LAW LLP                         Telephone:  650.482.3040
990 Industrial Road, Suite 207             Facsimile:   650.482.2820
13   San Carlos, CA  94070                      *tjh@hanniglaw.com*
*paul@hanniglaw.com*

14

15      **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the
persons at the addresses listed in the Service List and placed the envelope for collection and
16   mailing, following our ordinary business practices.  I am readily familiar with Severson &
Werson's practice for collecting and processing correspondence for mailing.  On the same day that
17   the correspondence is placed for collection and mailing, it is deposited in the ordinary course of
business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

18      I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed on February 22, 2019, at San Francisco, California.

19

20

21                                                  SANDRA CHAO

22

23

24

25

26

27

28

07685.2131/14765342.1

PROOF OF SERVICE

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Ted J. Hannig (SBN 111691); Paul A. Mann (SBN 314299)<br>Hannig Law LLP<br>990 Industrial Road, Suite 207<br>San Carlos, CA 94070<br>    TELEPHONE NO.: (650) 482-3040    FAX NO. *(Optional):* (650) 482-2820<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs Danford Foundation and Katherine F. Fisher | *FOR COURT USE ONLY* |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo<br>    STREET ADDRESS: 400 County Center<br>    MAILING ADDRESS:<br>    CITY AND ZIP CODE: Redwood City 94063<br>    BRANCH NAME: |

| |
|---|
| PLAINTIFF/PETITIONER: Danford Foundation and Katherine F. Fisher<br><br>DEFENDANT/RESPONDENT: Wells Fargo Bank, N.A., et al. |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>18CIV06625 |

TO *(insert name of party being served):* Wells Fargo & Company

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 4, 2019

Ted J. Hannig
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*
    Notice of Case Management Conference

**(To be completed by recipient):** 2/21/19

Date this form is signed:

M. Washio
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Ted J. Hannig (SBN 111691); Paul A. Mann (SBN 314299)<br>Hannig Law LLP<br>990 Industrial Road, Suite 207<br>San Carlos, CA 94070<br>TELEPHONE NO.: (650) 482-3040        FAX NO. *(Optional)*: (650) 482-2820<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiffs Danford Foundation and Katherine F. Fisher | FOR COURT USE ONLY |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo<br>STREET ADDRESS: 400 County Center<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Redwood City 94063<br>BRANCH NAME: |

| |
|---|
| PLAINTIFF/PETITIONER: Danford Foundation and Katherine F. Fisher<br><br>DEFENDANT/RESPONDENT: Wells Fargo Bank, N.A., et al. |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>18CIV06625 |

TO *(insert name of party being served)*:  Wells Fargo Bank, N.A.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 4, 2019

Ted J. Hannig
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓]   A copy of the summons and of the complaint.
2. [✓]   Other *(specify)*:
      Notice of Case Management Conference

*(To be completed by recipient):*

Date this form is signed:  2/21/19

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ted J. Hannig (SBN 111691); Paul A. Mann (SBN 314299)<br>Hannig Law LLP<br>990 Industrial Road, Suite 207<br>San Carlos, CA 94070<br>TELEPHONE NO.: (650) 482-3040  FAX NO. *(Optional):* (650) 482-2820<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiffs Danford Foundation and Katherine F. Fisher | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City 94063
BRANCH NAME:

PLAINTIFF/PETITIONER: Danford Foundation and Katherine F. Fisher

DEFENDANT/RESPONDENT: Wells Fargo Bank, N.A., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV06625 |
|---|---|

TO *(insert name of party being served):* Wells Fargo Foundation

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: February 4, 2019

Ted J. Hannig
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   Notice of Case Management Conference

*(To be completed by recipient):*

Date this form is signed: 2/21/19

M. Warino
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED) ▶ (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

NOTICE OF CASE MANAGEMENT CONFERENCE

*Danford Foundation, et al.*

**ENDORSED FILED** No: 18CIV06685
SAN MATEO COUNTY

*Wells Fargo Bank, N.A., et* DEC 11 2018     Date: APR 10 2019

vs.

Clerk of the Superior Court Time 9:00 a.m.
By: ANTONIO R. GERONIMO
Deputy Clerk

Dept. ___         —on Tuesday & Thursday
Dept. ___         —on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

   •b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10–days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management Judge will issue orders at the conclusion of the conference that may include:

   a) Referring parties to voluntary ADR and setting an ADR completion date;

   b) Dismissing or severing claims or parties;

   c) Setting a trial date.

8. The Case Management Judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

**SEVERSON & WERSON**
0 7 2019
Received

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*